IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL KOESTER, #R-45640,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 16-cv-00407-NJR |
| | ) |
| **UNKNOWN PARTIES,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Michael Koester, an inmate currently confined at Stateville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants acted with deliberate indifference to his health when they housed him with an inmate who had not been properly treated for a pinworm infection and caused Plaintiff to contract pinworms. (Doc. 1).

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under § 1915A and dismiss the complaint for failure to state a claim.

## The Complaint

The events giving rise to Plaintiff's claim occurred while Plaintiff was incarcerated at Big Muddy River Correctional Center ("Big Muddy") in 2015. (Doc. 1, pp. 6 and 9). According to Plaintiff's statement of claim and the grievance attached to the complaint, Plaintiff was housed with an inmate who had been diagnosed with pinworms when the inmate was incarcerated at Graham Correctional Center ("Graham"). *Id*. at 6. Plaintiff alleges that while the inmate was incarcerated at Graham, he received treatment for pinworms, but that he was never "treated 100%." *Id*. at 9. Subsequently, when the inmate was transferred to Big Muddy, a physician's

assistant took a stool sample and told the inmate that there was no sign of infection. *Id*. The inmate was then placed in a cell with Plaintiff. At some point thereafter, Plaintiff noticed that the inmate was "always itching his anus" and inquired about it. *Id*. The inmate told Plaintiff that the doctor and physician's assistant would not treat him for pinworms. *Id*. A few days later, Plaintiff began experiencing itchiness in the anal area and later discovered small, white parasites in his stool. *Id*. at 10. On April 4, 2015, Plaintiff put in a request to see the nurse, and a few days later a stool sample was ordered. *Id*. Plaintiff tested positive for pinworm infection. *Id*. Plaintiff's cell was cleaned with a "strong chemical," and the doctor treated Plaintiff and his cellmate twice with Pin-X, a medication used to treat pinworms. *Id*. Plaintiff states that he was "extremely ill" while on the medication and that he still feels "a mild but life-altering effect." *Id*. at 6.

Plaintiff has not identified any defendants by name. Instead, he has listed John/Jane Does from the healthcare unit at Graham, John/Jane Does from the healthcare unit at Big Muddy, and John/Jane Doe transfer coordinator at Graham. He alleges that the John/Jane Does from the healthcare unit at Graham and the transfer coordinator at Graham violated his constitutional rights when they allowed a medically infected person to be transferred to his facility, thereby causing Plaintiff to contract pinworms. *Id*. Plaintiff further alleges that the John/Jane Does from the healthcare unit at Big Muddy violated his rights by failing to quarantine the infected inmate upon his arrival at Big Muddy. Plaintiff, who is seeking monetary relief, insists that his health has been permanently affected by Defendants' actions.

## Discussion

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 828 (7th Cir.2009) (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 103 (1976)). To establish an Eighth Amendment medical needs claim, a plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

In this case, Plaintiff does not contend that Defendants denied him adequate medical treatment or acted with deliberate indifference to his medical needs once he contracted pinworms. To the contrary, the complaint notes that staff in the healthcare unit at Big Muddy ordered a stool sample, provided Plaintiff with a medication to treat his infection, and ordered a thorough cleaning of Plaintiff's cell. Instead, the thrust of Plaintiff's claim is that Defendants were deliberately indifferent to the *risk* of a *future injury* to Plaintiff's health when they allowed an inmate, who had been previously diagnosed with and treated for pinworms, to be housed in the same cell with Plaintiff.

To be sure, the Eighth Amendment protects inmates from deliberate indifference to substantial risks of serious damage to their health. *See Helling v. McKinney,* 509 U.S. 25, 33 (1993). For instance, a prison official who ignores a serious medical risk, such as deliberately exposing an inmate to a "serious communicable disease" even if the inmate does not contract the disease, may be held liable under the Eighth Amendment. *Id*. To hold prison officials liable, however, there must be a "substantial risk of serious harm," and officials must have known of and disregarded the "excessive" risk of harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 832-837 (1994). The question then is whether Defendants knowingly and deliberately ignored a substantial risk of serious harm to Plaintiff's health when they allowed him to be exposed to an inmate who was infected with pinworms. It is unclear whether any of the Defendants even knew that Plaintiff's cellmate was infected with pinworms when he was placed in a cell with Plaintiff,

but even assuming they did, the Court finds that exposure to pinworms is not the type of "serious" risk that would amount to a violation under the Eighth Amendment.

According to the Centers for Disease Control and Prevention, a pinworm is a "small, thin, white roundworm (nematode) called *Enterobius vermicularis* that sometimes lives in the colon and rectum of humans." *Parasites–Enterobiasis (also known as Pinworm Infection): Pinworm Infection FAQs*, CENTERS FOR DISEASE CONTROL AND PREVENTION, http://www.cdc.gov/parasites/pinworm/gen_info/faqs.html (last updated January 10, 2013). While an infected person is sleeping, female pinworms leave the intestine through the anus and deposit thousands of eggs in the skin around the anus. *Id*. Pinworms spread easily and re-infection is common, which is why outbreaks occur frequently in daycare centers and institutions where people are housed in close quarters. *See id*. In fact, among these groups, "prevalence can reach 50%." *Id*. Pinworms spread when a person who is infected touches his or her anal area and the eggs attach to the person's fingernails. The person can then "spread the eggs directly to others through their hands, or through contaminated clothing, bedding, food, or other articles." *Pinworms: Summary*, NATIONAL INSTITUTES OF HEALTH–U.S. NATIONAL LIBRARY OF MEDICINE, https://www.nlm.nih.gov/medlineplus/pinworms.html (last visited May 13, 2016). Good hand hygiene is the most effective method of prevention. *See Parasites–Enterobiasis (also known as Pinworm Infection): Pinworm Infection FAQs*. None of the medical literature reviewed recommended quarantining an infected person.

Surprisingly, most people infected with pinworms experience no symptoms, although some people may "experience anal itching and restless sleep." Mayo Clinic Staff, *Pinworm Infection: Definition*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/pinworm/basics/definition/CON-20027072 (last updated April 8, 2015); *see also*

*Parasites–Enterobiasis (also known as Pinworm Infection): Pinworm Infection FAQs* (noting that symptoms of pinworm infection are usually "mild").

While the thought of pinworms may be unsettling and an infection may cause some physical discomfort, pinworms "don't carry disease" and "rarely cause serious health problems." *Pinworms–Topic Overview*, WEBMD, http://www.webmd.com/children/tc/pinworms-topic-overview (last visited May 5, 2016); *see also* Mayo Clinic Staff *Pinworm Infection: Complications*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/pinworm/basics/complications/CON-20027072 (last updated April 8, 2015) (noting that "[t]ypical pinworm infections don't cause serious problems.") Aside from a secondary infection caused by itching the anal area, the most serious complication is that in "rare circumstances, heavy infestations can cause infection of female genitals." *Id*. The latter risk is obviously not an issue in male correctional facilities. In addition, pinworms can be treated by using over-the-counter medications, such as Pin-X, the medication Plaintiff received.

Plaintiff has failed to plausibly allege that Defendants exposed him to a substantial risk of serious harm, "one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004); *see also Helling,* 509 U.S. at 33 (Eighth Amendment claim may be based on a condition of confinement "that is sure or very likely to cause serious illness and needless suffering."). While annoying, pinworm infections are common, treatable, and generally do not cause any serious health issues. Plaintiff's allegation that he contracted pinworms, which was promptly treated with two doses of a medication that made him sick to his stomach, does not present a "substantial 'risk of serious damage to his future health'" as required to state a claim under the Eighth Amendment. *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinley*, 509 U.S.

at 25). For these reasons, Plaintiff's complaint shall be dismissed, but the dismissal shall be without prejudice. The Court cannot imagine any facts that would convert Plaintiff's allegations into a viable claim, but out of an abundance of caution, the Court will grant Plaintiff leave to amend, on the off-chance that Plaintiff has omitted important information that would enable him to articulate an actionable claim.

## Pending Motions

**Motion for Leave to Proceed IFP (Doc. 3)**

Plaintiff's motion to proceed *in forma pauperis* (Doc. 2) remains pending and shall be addressed in a separate order.

**Motion for Recruitment of Counsel (Doc. 4)**

Plaintiff has filed a motion requesting that the Court recruit counsel to represent him in this matter. (*See* Doc. 3). The dismissal of the complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually

and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

At this point, Plaintiff has made no effort to secure counsel on his own. (Doc. 4, p. 1). Before the Court will appoint counsel, Plaintiff must at least make an attempt to find counsel on his own. Moreover, at this juncture, the Court is primarily concerned with whether Plaintiff has a colorable § 1983 claim, and if so, whether he is able to articulate that claim to this Court. Plaintiff's complaint was clear and coherent. The problem with Plaintiff's complaint does not appear to be an inability on his part to communicate his claim. Rather, the problem appears to be that Plaintiff does not have an actionable claim, a problem that even the best attorney cannot cure. For these reasons, Plaintiff's motion for recruitment of counsel (Doc. 4) is **DENIED**.

**Motion for Service of Process at Government Expense (Doc. 5)**

Plaintiff's motion for service of process at government expense (Doc. 5) remains pending and shall be addressed by the Court in a subsequent order.

<u>Disposition</u>

**IT IS HEREBY ORDERED** that Plaintiff's Complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

Plaintiff is **GRANTED** leave to file his "First Amended Complaint" within **THIRTY-FIVE DAYS** of entry of this Memorandum and Order (on or before **June 20, 2016**). Should

Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, this case will be dismissed for failure to comply with an order of this Court and the case will be closed. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997)*; Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994). Failure to file an amended complaint by the prescribed deadline will result in the dismissal of this action with prejudice and the assessment of a "strike" for purposes of 28 U.S.C. § 1915(g).

Plaintiff is **ADVISED** that should he decide to file an amended complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action. The amended complaint shall present each claim in a separate count, and each count shall specify, ***by name***, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant that violated federal or constitutional law. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. To enable Plaintiff to comply with this order, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless

of whether Plaintiff elects to file an amended complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven (7) days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 16, 2016**

*Nancy J. Rosenstengel*
_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**